UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSE CABRERA,<br><br>          Petitioner,<br><br>          v.<br><br>SEAN MEDEIROS,<br><br>          Respondent. | Civil No.: 15-cv-13768-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                                       June 8, 2017

### I. Introduction

Petitioner Jose Cabrera ("Cabrera") has filed a petition seeking a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254 alleging various constitutional violations in connection with his 2011 conviction for second-degree murder. D. 1. Respondent Sean Medeiros ("Medeiros"), the Superintendent of MCI-Norfolk, opposes the Petition on the bases that Cabrera's grounds for habeas relief either have been waived or fail on the merits. D. 23 at 3. For the reasons stated below, the Court DENIES Cabrera's Petition, D. 1.

### II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus if the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A state court

1

decision is contrary to clearly established federal law only if the state court 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Restucci v. Spencer, 249 F. Supp. 2d 33, 42 (D. Mass. 2003) (alternations in original) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).  As the Supreme Court has clarified, this does not requires that a state court "cite or even be aware of [the Supreme Court's] cases." Harrington v. Richter, 562 U.S. 86, 98 (2011) (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  Rather, a state-court decision is not susceptible to a habeas challenge "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." Early, 537 U.S. at 8.

A state court decision is an "unreasonable application" of federal law "if the state court identifie[d] the correct governing legal rule from [the Supreme] Court's cases but unreasonably applie[d] it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407. Accordingly, a federal court may only grant habeas relief if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. In sum, the AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, __ U.S. __, 134 S. Ct. 10, 16 (2013).

**III.    Factual and Procedural Background**

On November 1, 2008, Tony Pich ("Pich") was killed in a gang-related shooting in Lynn, Massachusetts. S.A. at 124-29.[1] Two days after the shooting, on November 3, 2008, the Lynn

---

[1] On March 21, 2016, Medeiros manually filed with the Court a Supplemental Answer containing relevant documents from the state court proceedings. D. 16. The Court cites to the documents contained in the Supplemental Answer as "S.A."

2

Police interviewed eleven-year-old Randy Seang ("Seang") who had been at the same house as Pich at the time of the shooting. D. 2-1 at 2. During the interview, Seang identified Cabrera as Pich's shooter to Detective Stephen Withrow ("Detective Withrow"). Id. Seang told Detective Withrow that he was "100 percent sure" that Cabrera had been the shooter and that he had also heard from other individuals that Cabrera had been the shooter. Id. at 2-3. Three days later, on November 6, 2008, Lynn Police interviewed Cabrera at the Lynn Police Department. S.A. at 65-69. At the end of the interview, Lynn Police arrested Cabrera for the murder of Pich. Id. On January 2, 2009, an Essex County grand jury indicted Cabrera for first-degree murder. S.A. 89.

Prior to trial, Cabrera moved to suppress certain evidence, including the statements he had made to Lynn Police during the November 6, 2008 interview. Id. at 101-05. After a hearing that spanned several days in July and August 2010, the Essex Superior Court ("trial court") denied Cabrera's motion to suppress his statements to Lynn Police. Id. at 84, 118. His jury trial commenced on January 4, 2011. S.A. at 93. At trial, Seang disavowed his prior identification of Cabrera as Pich's shooter. D. 2-1 at 2. Seang not only provided a different account of his whereabouts at the time of the shooting, but he claimed that he did not remember the interview he gave to Lynn Police on November 3, 2008. Id. Over the objection of Cabrera's trial counsel, Detective Withrow subsequently testified to Seang's prior identification of Cabrera as the shooter, including Seang's claim that he was "100 percent sure" it had been Cabrera. Id. Detective Withrow also testified to Seang's prior claim that he had heard from other individuals in the community that Cabrera had been Pich's shooter. Id. at 3. Cabrera's trial counsel objected to this particular statement as inadmissible hearsay and simultaneously moved for a mistrial. Id. The trial court sustained the objection and instructed the jury to disregard that piece of testimony, but ultimately denied Cabrera's motion for a mistrial. Id. On February 11, 2011, the jury found

3

Cabrera guilty of the lesser included charge of second-degree murder and the trial court sentenced Cabrera to life imprisonment.  D. 1 at 1; S.A. at 99.

Cabrera filed a timely notice of appeal of his conviction with the Massachusetts Appeals Court ("Appeals Court").  S.A. at 9, 11.  On March 18, 2014, the Appeals Court upheld Cabrera's conviction.  D. 1 at 2.  Cabrera then filed an application for further appellate review with the Massachusetts Supreme Judicial Court, but that court denied his application on July 30, 2014.  Id.  Cabrera filed the instant Petition, challenging the state court conviction with this Court on October 26, 2015.[2]  D. 1.  Medeiros opposes the Petition.  D. 15, 23.

---

[2] The Court notes that it appears that Cabrera filed the Petition nearly fifteen months following the final ruling on his appeal in the state-court proceeding. For habeas corpus petitions, there is ordinarily a one-year statute of limitations that runs, as is relevant here, from "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C. § 2244(d)(1)(a); see Delaney v. Matesanz, 264 F.3d 7, 16 (1st Cir. 2001).  Because the parties do not raise a challenge to timeliness and because the Court concludes that the Petition fails on the merits, the Court does not reach a determination as to whether Cabrera's petition is also time-barred.

## IV. Discussion

### A. The Trial Court Did Not Violate Cabrera's Right to Confrontation

Cabrera first asserts that he is entitled to habeas relief because the trial court violated his right to confrontation by allowing Detective Withrow to testify as to Seang's out-of-court identification of Cabrera as Pich's shooter. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause requires that criminal defendants be provided "an adequate opportunity to cross-examine adverse witnesses." United States v. Owens, 484 U.S. 554, 557 (1988). In the instant case, Cabrera objects to Detective Withrow's testimony that Seang claimed to be "100 percent sure" that Cabrera was the shooter. D. 1 at 5. Although Cabrera concedes that Seang testified at trial—and so was available to be cross-examined—Cabrera argues that Seang's conduct on the witness stand effectively precluded his trial counsel from cross-examining Seang as to the identification, such that Detective Withrow's testimony should have been excluded because Seang was essentially "unavailable" for cross-examination. D. 2 at 6 (citing Crawford v. Washington, 541 U.S. 36, 68 (2004)).

The Appeals Court nevertheless affirmed the trial court's decision to admit Detective Withrow's testimony, resting its decision on Commonwealth v. Cong Duc Le, 444 Mass. 431 (2005). Cong Duc Le presented a similar set of facts and the Supreme Judicial Court in that case held that a prior identification is admissible even when the identifying witness subsequently denies the prior identification. Id. at 438. Accordingly, the Appeals Court concluded that the Confrontation Clause requires only an opportunity for a criminal defendant to cross-examine a witness regarding his extrajudicial statement. D. 2-1 at 3. Because the trial court "did not limit the scope of [Cabrera's] cross-examination of Seang, nor was it impeded by the assertion of a

privilege," Cabrera's confrontation right was not violated. Id. Indeed, as the Appeals Court observed, "the most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than ha[d] already been accomplished by the fact that the witness is now telling a different, inconsistent story." Id. (alteration in original) (quoting Commonwealth v. Daye, 393 Mass. 55, 72 n.15 (1984)). The Court agrees with the reasoning of the Appeals Court that Cabrera's right to confrontation was not violated by the admission of Seang' prior identification because Seang was available for cross-examination at trial.

Cabrera contends, however, that the Confrontation Clause requires something more—"an opportunity for 'effective' cross-examination." D. 2 at 9 (quoting Kentucky v. Stincer, 482 U.S. 730, 739 (1987); citing Delaware v. Van Ardsall, 475 U.S. 673, 679 (1985)). In particular, Cabrera directs the Court to United States v. Owens, 484 U.S. 554, 561 (1988), which required that for a witness to be considered "subject to cross-examination" he must be "placed on the stand, under oath, and respond[] 'willingly' to questions." Id. at 561. In Cabrera's view, Seang's reluctance to appear at trial and his denial of his prior identification made him an "unwilling" witness, shielding him from effective cross-examination. D. 2 at 9-10. Yet, the Supreme Court's ruling in Owens is inapposite to Cabrera's position. First, the Supreme Judicial Court in Cong Duc Le cited the same language from Owens yet reached a contrary result. Cong Duc Le, 444 Mass. at 437-38 (citing Owens, 484 U.S. at 561). Second, the quoted language notwithstanding, the Supreme Court ultimately held in Owens that the Confrontation Clause is not "violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." Owens, 484 U.S. at 564. Lower federal courts have extended this principle to also cover cases where the identifying witness disclaimed his prior identification at trial. Cong Duc Le, 444 Mass. at 438-39 (collecting cases). Accordingly, the Court is not

persuaded that the Confrontation Clause bars admission of a prior identification because the identifying witness subsequently disclaimed the identification on the witness stand. More importantly, the Court cannot conclude that the trial court's decision to admit Seang's prior identification of Cabrera as Pich's shooter was contrary to "clearly established federal law" as required by the AEDPA.

Cabrera also contends that the Appeals Court erred in relying on Massachusetts, rather than federal, precedent in reaching its decision. D. 2 at 7-8. This argument is unavailing, however, because there is no requirement that the state court cite directly to Supreme Court precedent. Harrington, 562 U.S. at 98. Relatedly, Cabrera argues that the Appeals Court decision is in error because it relies on Cong Duc Le, which in turn relies on pre-Crawford law. D. 2 at 8. However, although Crawford overturned the Supreme Court's decision in Ohio v. Roberts, 448 U.S. 56 (1980), Crawford did not disturb the Supreme Court's case law related to what it means for a declarant to be unavailable for cross-examination. See Crawford, 541 U.S at 61-62, 68-69. That is, relying on pre-Crawford cases like Owens for establishing whether a declarant is considered unavailable remains legally sound.

For the reasons discussed, Cabrera has not established that the admission of Detective Withrow's testimony is contrary to or an unreasonable application of Supreme Court precedent and so his Confrontation Clause argument fails to provide a basis for habeas relief.

### B. Cabrera's Remaining Arguments Do Not Provide a Basis for Relief

#### 1. *Cabrera's Second and Third Bases for Relief Are Waived*

Cabrera provides two additional bases for relief: first, he asserts that the trial court erred in denying his motion for a mistrial based upon the testimony of Detective Withrow, D. 1 at 7, and second, he asserts that the trial court erred in admitting statements that he made during his November 6, 2008 interview with Lynn Police. Id. at 8.

Medeiros contends that Cabrera waived these additional grounds for habeas relief because Cabrera failed to adequately develop either argument in his motion papers. D. 23 at 6-7. In the First Circuit, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see United States v. Sevilla-Oyola, 770 F.3d 1, 13-14 (1st Cir. 2014) (holding that defendant waived his claim by providing only a brief argument with a single case citation); United States v. Williams, 630 F.3d 44, 50 (1st Cir. 2010) (concluding that an argument amounting to "a single three-sentence paragraph" was insufficient and, therefore, waived). This principle applies equally in the context of a petition for a writ of habeas corpus. See Glacken v. Dickhaut, 585 F.3d 547, 551 (1st Cir. 2009); Williams v. Roden, No. 09-10237-JLT, 2010 WL 2428822, at *10 (D. Mass. Apr. 6, 2010); cf. Holmes v. Spencer, 685 F.3d 51, 66 (1st Cir. 2012) (suggesting a habeas petitioner's brief must provide at least "the raw materials" of an argument for his claim not to be waived).

The Court concludes that Cabrera has waived his second and third grounds for relief. First, as Medeiros observes, the majority of Cabrera's brief in support of the Petition is dedicated to arguing his first ground for relief based on the Confrontation Clause. D. 23 at 6; see D. 2. Although Cabrera suggests that his first and second grounds for relief are closely related, D. 2 at

3, Cabrera still only addresses the merits of his second and third grounds for relief in a perfunctory manner, id. at 12. Cabrera's argument in support of his second and third grounds for relief amounts to (1) an admission that they are "unexhausted and procedurally defaulted from review" and (2) a request that the Court nevertheless "independently review the record . . . to determine if the State court's decision is objectively unreasonable."[3] Id. This is insufficient as it fails to provide even the "raw materials" of an argument that Cabrera is entitled to habeas relief on his second and third grounds. See Holmes, 685 F.3d at 66. In addition, the Court provided both parties with an opportunity to provide additional briefing, D. 19 (instructing petitioner to file his brief on or before June 15, 2016), but Cabrera neglected to use that opportunity to further develop his arguments. In light of the foregoing, the Court determines that Cabrera has waived his second and third grounds for relief.

> 2. *Cabrera's Second and Third Bases for Relief Additionally Fail on the Merits*

Because Cabrera is a *pro se* petitioner, he is entitled to "some latitude in the interpretation of his claims." Restucci, 249 F. Supp. 2d at 40 n.3 (citing Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); Prou v. United States, 199 F.3d 37, 42 (1st Cir. 1999)). Nevertheless, even

---

[3] Cabrera cites two cases in support of his request that the Court "independently review the record" to find support for the alleged constitutional violations, Early v. Packer, 537 U.S. 3 (2002) (per curiam), and Himes v. Thompson, 336 F.3d 848 (9th Cir. 2003). In context, it is not clear how Early and Himes support Cabrera's position. In Early, the Supreme Court did not conduct an independent review of the record. See Early, 537 U.S. at 8-9. And, although the Ninth Circuit in Himes did conduct an "independent review of the record," it did so only because it found that the state court had failed to produce a reasoned decision. Himes, 336 F.3d at 853. Here, the Appeals Court issued an opinion detailing the reasons for rejecting Cabrera's direct appeal of his criminal conviction. See D. 2-1. Moreover, the Himes court only reviewed the record to determine the reasoning behind the state court's decision—not to develop arguments on behalf of the habeas petitioner. See Himes, 336 F.3d at 853. As a result, neither case changes the Court's conclusion that Cabrera has waived his second and third grounds for relief.

9

if the Court were to credit Cabrera's limited arguments as to his second and third grounds for relief, the Court still concludes that there is no basis for granting the Petition on these grounds.

> a) The Trial Court's Denial of Cabrera's Motion for Mistrial Did Not Violate His Right to a Fair Trial

Cabrera's second ground for seeking habeas relief is based upon the objection that the trial court erred in denying Cabrera's motion for a mistrial. D. 1 at 7. Cabrera first argues that his motion for a mistrial was grounded on the same Confrontation Clause issue that he developed as his first ground for relief. Id.; D. 2 at 3. If that were the case, the argument would fail for the reasons already discussed.[4] According to the trial court and Appeals Court records, however, Cabrera's original motion for a mistrial was in fact grounded on a different argument altogether. See D. 2-1 at 3. In the course of his testimony, Detective Withrow also testified that during the November 3, 2008 interview Seang claimed that "he had heard" that Cabrera shot the victim. Id. Cabrera's trial counsel objected to the testimony and immediately moved for a mistrial, arguing that there was no way to "unring this bell." S.A. at 141. The trial court did not initially rule on the mistrial motion but did contemporaneously instruct the jury not to consider this piece of testimony. D. 2-1 at 3; S.A. at 142. The trial court later denied the mistrial motion. Id. at 2-3. On appeal, Cabrera argued that the trial court abused its discretion in denying the motion for a mistrial. Id. at 2-3. The Appeals Court, however, rejected this argument, observing that (1) the trial court was entitled to rely on a curative instruction as a remedy, and (2) the hearsay statement was not prejudicial to Cabrera because it was consistent with his theory of the case (i.e., that Seang

---

[4] Cabrera also failed to raise this argument with the trial court or the Appeals Court and so he has failed to exhaust the remedies available to him in state court as to this claim. 28 U.S.C. § 2254(b)(1). Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Id. § 2254(b)(2).

was not able to identify Cabrera, but instead based his identification on what he had heard from other people). Id. at 3. In other words, Cabrera's original argument for a mistrial, which he relied upon in state court, was predicated on state law principles. Cabrera now asserts that the denial of his motion for a mistrial, and his subsequent appeal, violated his constitutional right to a fair trial. D. 1 at 7.

The Supreme Court has made clear that "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). To succeed on his second ground for habeas relief, then, Cabrera would need to show not only that the Appeals Court erred, but also that its error rose to the level of a due process violation. See Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011) (noting that "a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief"). Yet, for an evidentiary ruling to constitute a due process violation, it must offend "those fundamental conceptions of justice which lie at the base of our civil and political institutions." Dowling v. United States, 493 U.S. 342, 352-53 (1990) (internal quotations omitted) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)); see Garuti v. Roden, 733 F.3d 18, 24 (1st Cir. 2013) (recognizing that to form the basis for habeas relief "an improper ruling on an evidentiary issue in state court 'must be so arbitrary and capricious as to constitute an independent due process . . . violation'" (quoting Coningford, 640 F.3d at 484)). Here, there is nothing in the record—and Cabrera offers no evidence or argument—to suggest that the trial court, as affirmed by the Appeals Court, erred in denying a mistrial, much less that any potential error was so egregious that it denied Cabrera his constitutional right to a fair trial. Indeed, the record reflects that the trial court excluded the challenged testimony and instructed that the

jurors were not to rely on that statement in reaching their decision. D. 2-1 at 3. For this reason, Cabrera's second ground for habeas relief fails.

          b)        The Court Does Not Grant Habeas Relief Based upon the State Court Decisions to Deny Cabrera's Motion to Suppress

As his third and final ground for seeking habeas relief, Cabrera asserts that the trial court erred in admitting the statements that Cabrera made to police officers during an interview on November 6, 2008, immediately prior to his arrest for the murder of Pich. D. 1 at 8. During the course of the interview, an attorney hired by Cabrera's father had identified himself to the Lynn Police as Cabrera's attorney and had sought to speak with Cabrera. S.A. at 67-69. The police officers did not inform Cabrera at any point prior to his arrest that his attorney was attempting to contact him. See id. at 69-74. Cabrera's trial counsel then sought to exclude the statements from the interview on the authority of Commonwealth v. Mavredakis, 430 Mass. 848, 861 (2000), which held that police officers have a duty to inform a suspect in a custodial interview of his attorney's efforts to provide legal advice under Article XII of the Massachusetts Declaration of Rights. The trial court, however, declined to exclude the statements because it concluded that Cabrera gave them during a non-custodial interview. D. 2-1 at 3-4. The Appeals Court affirmed the trial court's ruling. Id. at 4. Cabrera again challenges the trial court's conclusion that the November 6, 2008 interview was non-custodial.

There is no requirement under federal law that a criminal suspect in either a custodial or non-custodial interview be informed of his attorney's attempts to contact him. Moran v. Burbine, 475 U.S. 412, 427-28 (1986) (declining to expand Fifth Amendment rights to "require the police to keep [a] suspect abreast of the status of his legal representation"). The Supreme Judicial Court, however, has interpreted Article XII of the Massachusetts Declaration of Rights to encompass greater protections for criminal suspects than those under the Fifth Amendment. Mavredakis, 430

12

Mass. at 859 (determining that Article XIII "requires a higher standard of protection than that provided by Moran"). Specifically, under Massachusetts law, a suspect in a custodial interview—but not a non-custodial interview—has the right to be kept apprised of his attorney's attempts to contact him. See id. at 861; Commonwealth v. DiGiambattista, 442 Mass. 423, 455 (2004) (citing Mavredakis for this proposition). Accordingly, the determination of whether the Lynn Police's November 6, 2008 interview of Cabrera was custodial or non-custodial is significant as a matter of state law. The Court may only grant a writ of habeas corpus if it determines that the state court adjudication violated "clearly established Federal law." 28 U.S.C. § 2254(d)(1). Here, even if the Court were to assume *arguendo* that the trial court was mistaken in determining that Cabrera's interview was non-custodial, its decision to admit Cabrera's statements into evidence would still not be contrary to federal law. Cabrera's third ground, thus, does not provide a basis for this Court to grant habeas relief.

## V. Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition for a writ of habeas corpus, D. 1.

Cabrera must demonstrate "a substantial showing of the denial of a constitutional right" to receive a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To do so, he must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); Bly v. St. Amand, 9 F. Supp. 3d 137, 164-65 (D. Mass. 2014). Given the analysis of the factual record and the applicable law, the Court does not believe that reasonable jurists could differ as to how the Petition should have been resolved. For this reason, the Court is not inclined to issue a certificate of appealability, but will give petitioner until June 29, 2017 to file a

13

memorandum not to exceed five (5) pages that addresses whether a certificate of appealability is warranted.  Pursuant to Rule 11(a) governing § 2254 proceedings, if no such memorandum is received the Court will issue a notice of denial of the certificate of appealability.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge